# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| ANTONIO MARTINEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MONTEREY COUNTY SHERIFFS OFFICE, et al., <br><br> Defendants. | Case No. 18-cv-00475-BLF <br><br> **ORDER GRANTING WITH LEAVE TO AMEND MONTEREY DEFENDANTS' MOTION TO DISMISS** <br><br> [Re: ECF 47] |

Before the Court is Defendants' County of Monterey ("County") and Monterey County Sheriff's Office's ("Sheriff's Office") (collectively, "Monterey") Motion to Dismiss Plaintiffs' First Amended Complaint. ECF 47.¹ The Court held a hearing on the motion on November 29, 2018. For the reasons that follow, the motion is GRANTED WITH LEAVE TO AMEND.

## I. BACKGROUND

Plaintiffs Antonio Martinez III and Jenny Martinez ("Plaintiffs") are the children of Antonio Martinez ("Martinez"), who died tragically while in custody at the Monterey County Jail ("Jail") in January 2017. First Am. Compl. ("FAC") ¶¶ 1, 16, ECF 46. Defendant County owns the Jail, and Defendant Sheriff's Office manages the Jail's operations. *Id.* ¶¶ 3, 4, 36. Monterey contracts with Defendant California Forensic Medical Group, Inc. ("CFMG") to provide medical services to inmates at the jail, but Defendant Sheriff's Office retains ultimate authority over the health care and safekeeping of the inmates. *Id.* ¶¶ 2, 4.

Prior to his incarceration, Martinez had a history of mental illness, which ultimately led to drug addiction and homelessness. *Id.* ¶ 16. He was incarcerated on multiple occasions, including

---

[1] Defendant California Forensic Medical Group, Inc. filed an Amended Answer to the Complaint. ECF 55.

in 2016 when he was incarcerated at the Jail. During his time at the Jail, he experienced serious medical issues, including cirrhosis and hepatitis C, that were known to the Jail staff[2] and required careful monitoring, including medication and psychiatric help. *Id.* ¶¶ 18–19. He was set to be released in March 2017. *Id.* ¶ 20.

However, in January 2017, Martinez's heath rapidly deteriorated. It began with a serious cold-spell, for which the staff gave him blankets. *Id.* Soon thereafter, he began complaining of excruciating pain in his back, which prohibited him from walking. *Id.* ¶ 21. On January 19, 2019, at 9:00 a.m., he was examined by a Jail nurse. The nurse concluded there was no deformation, bruising, or redness present on Martinez's back, and Martinez did not provide the nurse with any apparent cause for the pain. *Id.* The nurse gave him a warm compress and ibuprofen and helped him into bed. *Id.* At 11:00 a.m., he was examined again after crawling to his door, but his vital signs were not ordinary. *Id.* ¶ 22. He was helped back into bed and told that medication would be available by 6:00 p.m. *Id.* Later in the day, several emergency calls were made on his behalf due to his back pain, resulting in his being taken to the infirmary at 4:30 p.m. He complained of severe, sharp pain that caused him pain in his legs; his heart rate was elevated, and his blood pressure was rising. *Id.* ¶ 23. The nurse prescribed him pain killers and a warm compress.

Martinez was not seen for another 24 hours. On January 20, 2017, he was reported to be doing better but he was still in some pain. *Id.* ¶ 24. He was instructed to continue his medication and was given a blanket and a lumbar roll regiment for 30 days. *Id.* 24 hours later, on January 21, 2017, at 2:30 p.m., another emergency call was made for Martinez, during which a nurse determined he was doing better, but reported he smelled of urine. *Id.* ¶ 25. He was able to walk on his own at this point. *Id.* At 4:35 p.m., a nurse was called again, and Martinez was sent to a new location for monitoring. *Id.* ¶¶ 26, 31. At 5:00 p.m., he was sent to the infirmary for evaluation; his color was irregular, and he was reported as having an anxiety attack. His medicine was refilled, and he was sent back to his cell. *Id.* ¶ 27. At 6:40 p.m., he was examined at booking, and he was "confused", was unable "to find the right words to say," could not perform simple

---

[2] At times, Plaintiffs refer to Martinez as being incarcerated in "prison," but the FAC appears to allege that these problems occurred during his stay at the Jail.

2

math, and was having other cognitive-functioning problems. *Id.* ¶ 28. He was sent back to his cell with a note that the 7:00 p.m. shift nurse would continue to monitor him. At 7:15 p.m., he was assessed once again; this time he could not walk and was disoriented, and his blood pressure had dropped and his pulse had risen. *Id.* ¶ 29. At this point, the nurse called the doctor, and Martinez was rushed to the hospital in a prison car, instead of waiting for an ambulance, given his severe condition. *Id.* Martinez died at the hospital a few hours later from multi-system organ failure and sepsis. *Id.* ¶ 30. The hospital medical records did not reflect Martinez's recent decline, referencing only his issues from that same day. The postmortem report indicated he likely died of an infection of the liver caused by his pre-existing cirrhosis.

CFMG has a policy of allowing nurses, as opposed to doctors, to determine whether a prisoner should be hospitalized. *Id.* ¶ 33. The policy states that nurses must be trained to determine if the prisoner's medical condition requires services outside of the jail, but Plaintiffs allege that this determination sometimes "can call for medical expertize [sic] that is beyond the training of nurses." *Id.* This policy "taxes nurses with making medical decisions about a prisoner's serious medical condition, even when its causes are not known to them and cannot be known to them, without further medical training." *Id.* ¶ 36. Moreover, Jail staff are reluctant to call for hospitalization given the expense to CFMG. *Id.* CFMG also has general policies stating that health services shall be provided in accordance with community standards, which were allegedly not followed in Martinez's case. *Id.* ¶ 37. Plaintiffs allege that as a result of this policy the nurses did not call a doctor even though they "were fully aware" of Martinez's condition. *Id.* ¶¶ 35, 36. Elsewhere, Plaintiffs state that "medical staff at the jail failed to recognize that [Martinez's] symptoms, combined with his existing and known medical conditions, made him susceptible to serious infection," describing the nurses as "ignoran[t]." *Id.* ¶ 38. Finally, Plaintiffs allege Monterey is "well aware of the fact the CFMG has a history of failure to provide adequate medical care to inmates in county jail" because "[m]any lawsuits have been filed against the county and CFMG," including one in 2016 that required CFMG to change its policies. *Id.* ¶ 37.

On January 22, 2018, Plaintiffs filed this action, bringing the following claims against Monterey: (1) failure to provide adequate medical care in violation of the Eight Amendment under

42 U.S.C. § 1983; (2) negligent supervision, training, hiring, and retention under California state law; (3) wrongful death in violation of Cal. Civ. Proc. Code § 377.60; and (4) failure to furnish/summon medical care in violation of Cal. Gov't Code § 845.6. *See* ECF 1. On May 17, 2018, the Court granted Monterey's motion to dismiss the Complaint because "the allegations in Plaintiffs' Complaint amount[ed] to a medical malpractice claim, but d[id] not form the basis of a civil rights action against the Monterey Defendants for deliberate indifference." Mot. to Dismiss Order ("Order") at 2, ECF 40. The Court held that Plaintiffs had not stated a plausible Eighth Amendment claim against Monterey because they had not shown that a policy or practice by Monterey was a "moving force" behind the alleged violation—namely, the alleged deliberate indifference to Martinez's need for medical care. *Id.* at 3. Specifically, the Court was "perplexed" by Plaintiffs' theory because the Complaint did "not name a single deputy who is alleged to have committed a constitutional violation." *Id.* For the same reasons, the state law claims required more factual specificity. *Id.*

Plaintiffs filed their Amended Complaint on June 18, 2018, alleging the same claims, and Monterey moved to dismiss on July 2, 2018, Mot., ECF 47.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

4

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. DISCUSSION

Monterey moves to dismiss each of the four causes of action against it. *See generally* Mot. Generally speaking, Monterey argues that the First Amended Complaint ("FAC") still contains no allegations of "improper treatment by custodial staff," and instead demonstrates only that Martinez received "continuous medical care," such that his claims remain essentially claims for medical malpractice. *See* Mot. at 3–4.

The Court discusses each claim in turn.

#### A. Eighth Amendment Claim

As the Court described in its previous Order, "[t]he Eighth Amendment protects inmates from cruel and unusual punishment, which includes the denial of medical care." *Conn v. City of Reno*, 591 F.3d 1081, 1094 (9th Cir. 2009). In order to state a cognizable claim under 42 U.S.C. § 1983, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a high legal standard," and a showing of medical malpractice or mere negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). A municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Instead, it is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible. *Id.* Here, then, to bring a valid § 1983 claim against Monterey for a violation of Martinez's Eighth Amendment rights based on inadequate medical care, Plaintiffs must plausibly allege that Monterey had a policy or practice that was the "moving force" behind the alleged constitutional violation. *Id.*

Monterey argues that Plaintiffs still fail to state an Eight Amendment claim because they "point to no policy or practice" of Monterey's that would support a deliberate indifference claim. Mot. at 5–6. Plaintiffs respond that the policy to which they point is CFMG's policy of allowing

nurses to make medical decisions that they are not qualified to make. According to Plaintiffs, this policy is attributable to Monterey through CFMG's contract with Monterey. Opp. at 6–7, ECF 51.

Plaintiffs' Complaint appears to assert alternative theories of liability as to the constitutional violation underlying their *Monell* claim. The first theory alleges that unidentified members of the nursing staff "were fully aware" of Martinez's condition, making them deliberately indifferent in their failure to properly address his serious medical needs. FAC ¶¶ 35, 36; *see also* FAC ¶ 58 ("[E]ach Defendant knew and had reason to know that [Martinez] was in need of immediate medical care due to his obviously deteriorating physical state . . . ."). The second theory alleges that the nurses were *incapable* of knowing the severity of Martinez's condition because of their lack of training. Under that theory, CFMG's policy of allowing undertrained nurses to determine medical needs beyond their training capacities constitutes deliberate indifference and led the nurses here to be "ignoran[t]" of Martinez's condition. *See, e.g.*, FAC ¶¶ 36; 38. For either theory, Plaintiffs must allege that Monterey had a policy that was a "moving force" of the underlying violation.

As to the first theory—dependent on deliberate indifference of the nurses—Plaintiffs' claim is still not adequately alleged. Most importantly, Plaintiffs fail to address the Court's key concern from its previous Order: that Plaintiffs did "not name a single [individual] who is alleged to have committed a constitutional violation." Order at 2. Specifically, the facts alleged do not raise an inference that any Jail employee was deliberately indifferent to Martinez's medical needs. Instead, the allegations still sound in negligence (and thus medical malpractice), rather than deliberate indifference. Though Plaintiffs document significant interactions between Jail staff (mostly nurses) and Martinez over a four-day period, on the facts alleged, the Court cannot say that any of these individuals was deliberately indifferent. First, the allegations do not elucidate whether each of these interactions was with a new nurse, or whether instead certain nurses had repeat interactions with Martinez. Second, several of the interactions between the nursing staff and Martinez involved the nurse prescribing Martinez treatments or monitoring and/or included evaluations that Martinez's physical state had improved to some degree. Because Plaintiffs do not allege that any of these nurses was otherwise aware of Martinez's declining wellbeing (for

6

example, through repeat interactions with Martinez or comparisons to chart entries), the Court cannot infer that any of the nurses's actions rose to the level of deliberate indifference, as opposed to mere negligence.

And even if Plaintiffs' Complaint had alleged deliberate indifference by any nurse or other employee, it is completely devoid of facts demonstrating that Monterey (or even CFMG) had a policy or practice that somehow would have led any of these employees to act with such indifference. *See id.* ¶¶ 33, 36. Indeed, the relationship between the Jail healthcare employees, CFMG, and Monterey is not sufficiently alleged to draw any inference that the nurses's actions are somehow imputable to Monterey based on some policy of Monterey's.

As to the second theory—dependent on deliberate indifference by CFMG through its alleged policy of allowing nurses to make decisions outside their training—Plaintiffs' claim is also not adequately alleged. Even if CFMG's alleged policy could constitute deliberate indifference by CFMG, Plaintiffs do not allege a policy of *Monterey's* that renders it subject to *Monell* liability. The Complaint does not allege whether Monterey has some independent policy that is the moving force behind CFMG's policy or whether instead Monterey's policy is to ratify and adopt CFMG's allegedly unconstitutional policy. If the former, there are no facts alleged regarding any independent policy of Monterey's that would be relevant here. If the latter, additional facts are required to show that Monterey had a policy of adopting or otherwise authorizing CFMG's policy. Monterey's contract with CFMG alone is not sufficient. And Monterey's knowledge of a previous lawsuit that resulted in new, court-prescribed policies is not sufficient, without more, to demonstrate the Monterey was aware of CFMG's policy relating to nurses's training and of the potential negative consequences of this policy. *Cf. Villarreal*, 254 F. Supp. 3d at 1184–85 (holding unconstitutional policy alleged because county was "on notice of their inadequate staffing and the deficiency of their policies" based on previous years' needs assessments and previous litigation relating to those same policies). Without more, this theory of liability against Monterey likewise fails.

Given that Plaintiffs may be able to add additional facts to their Complaint to sustain either of these theories, this claim is DISMISSED WITH LEAVE TO AMEND.

7

### B. Negligent Supervision, Training, Hiring, and Retention

Monterey argues that Plaintiffs' second cause of action must be dismissed because Monterey is immune from this claim. California Government Code § 815 states that "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person," "[e]xcept as otherwise provided by statute." Monterey argues that this provision mandates that "direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of [California] Civil Code section 1714." Mot. at 7 (quoting *Eastburn v. Regional Fire Protection Authority*, 31 Cal. 4th 1175, 1183 (2003)). Moreover, Monterey argues it is immune from California Government Code § 815.2(a), which provides for liability of a public entity for "injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment." Monterey argues that this liability does not apply to injuries to prisoners. Mot. at 7 (quoting *Lawson v. Superior Court*, 180 Cal. App. 4th 1372, 1383 (2010); citing Cal. Gov't Code 844.6(a)(2) ("Notwithstanding any other provision of this part, except [sections not including 815], a public entity is not liable for: . . . [a]n injury to any prisoner.")). And Monterey argues that even were it not immune, Plaintiffs fail to allege any wrongdoing by a specific employee. Mot. at 7. In response, Plaintiffs cite California Government Code § 845.6 as the governing statutory provision that abrogates the immunity. Opp. at 7–8.

The Court agrees with Plaintiffs that § 845.6 "permits claims against prison officials . . . for negligent supervision and training." *Villarreal v. Cty. of Monterey*, 254 F. Supp. 3d 1168, 1189 (N.D. Cal. 2017); *see Estate of Claypole v. Cty. of San Mateo*, No. 14-CV-02730-BLF, 2014 WL 5100696, at *8 (N.D. Cal. Oct. 9, 2014). However, Plaintiffs have not identified any prison official that negligently supervised or trained the nursing staff. Without an identified "employee" that caused the injury, [3] Monterey cannot be liable under § 845.6, and thus Monterey would be immune. Because Plaintiffs may be able to allege facts relating to relevant actions fo

---

[3] Plaintiffs do not allege that CFMG is an employee of Monterey for the purposes of this section. As such, the Court renders no opinion regarding CFMG's status as an employee under this law.

8

employees of Monterey, this claim is DISMISSED WITH LEAVE TO AMEND.

### C. Wrongful Death in Violation of Cal. Civ. Proc. Code § 377.60

Monterey also argues that Government Code § 844.6 immunizes it from Plaintiffs' wrongful death claim. *See* Mot. at 8 (citing *Lowman v. Cty. of Los Angeles*, 127 Cal. App. 3d 613, 615-617 (1982)). Plaintiffs again cite California Government Code § 845.6 as the foundation for their wrongful death claim.

The Court agrees with Plaintiffs that § 845.6 can serve as a basis for their wrongful death claim. *See Villarreal*, 254 F. Supp. 3d at 1190–91. Likewise, deliberate indifference under 42 U.S.C. § 1983 can form the basis for a wrongful death claim. *Id.*; *Estate of Prasad ex rel. Prasad v. Cty. of Sutter*, 958 F. Supp. 2d 1101, 1118 (E.D. Cal. 2013). However, Plaintiffs fail to state a valid § 1983 claim against Monterey, as discussed above, and fail to state a claim under § 845.6, as discussed below. Because the Court grants leave to amend on those claims, Plaintiffs' wrongful death claim is DISMISSED WITH LEAVE TO AMEND.

### D. Failure to Furnish/Summon Medical Care in Violation of Cal. Gov't Code § 845.6

California Government Code § 845.6 states, in relevant part, "a public employee, and the public entity where the employee is acting within the scope of his employment, is liable [for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody] if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Monterey argues that Plaintiffs' claim must be dismissed because (1) Monterey's employees furnished Martinez medical care, (2) there are no allegations specific to Monterey, and (3) there are no specific allegations that any Monterey employee failed to summon medical care. Mot. at 8.

Resolution of Monterey's first argument is not appropriate at the motion to dismiss stage. The Court cannot say, without more, that the nurses's provision of some medical services was insufficient as a matter of law to sustain the claim. And Monterey's second argument is simply incorrect—to satisfy the requirements of § 845.6, Plaintiffs do not need to have specific allegations as to Monterey's actions beyond its status as the employer of an employee who acted

9

unconstitutionally in the scope of his or her employment in order to hold Monterey liable. However, Monterey's third argument is well taken. As discussed above, Plaintiffs do not adequately allege that any employee of Monterey "knew or had reason to know" that Martinez was "in need of immediate medical care" yet "failed to take reasonable action to summon such medical care."

For these reasons, this claim is DISMISSED WITH LEAVE TO AMEND.

## IV. ORDER

For the foregoing reasons, the FAC is DISMISSED WITH LEAVE TO AMEND as to all four claims brought against Monterey. Plaintiffs amended complaint is due **on or before February 15, 2019.**

**IT IS SO ORDERED.**

Dated: January 11, 2019

_____
BETH LABSON FREEMAN
United States District Judge

10